**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SUZANNE DAKESSIAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: _____ |
| | ) | |
| WILLIAM SCHELL, IV, DOMINICK | ) | |
| DAFFNER, WORLD CHAMPIONSHIP | ) | **COMPLAINT AND DEMAND** |
| PUNKIN' CHUNKIN' INC., PUNKIN | ) | **FOR JURY TRIAL** |
| CHUNKIN ASSOCIATION, FRANK | ) | |
| PEYTON, FRANK SHADE, TERRY | ) | |
| BEWSTER, DAVID QUIGLEY, MCCULLEY, | ) | |
| EASTHAM & ASSOCIATES, INC., | ) | |
| WHEATLEY FARMS, INC., E. DALE | ) | |
| WHEATLEY, JEFFREY T. WHEATLEY, | ) | |
| DISCOVERY COMMUNICATIONS, INC.; | ) | |
| STATE OF DELAWARE; and the STATE OF | ) | |
| DELAWARE (DEPARTMENT OF | ) | |
| NATURAL RESOURCES AND | ) | |
| ENVIRONMENTAL CONTROL) | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiff Suzanne Dakessian for her Complaint alleges as follows:

## NATURE OF THE ACTION

1.       This is an action for catastrophic personal injuries, pain and suffering,

emotional distress and economic damages suffered by Plaintiff Suzanne Dakessian ("Ms.

Dakessian" or "Plaintiff") as a direct and proximate result of the Defendants' negligent, grossly

negligent and wrongful conduct. Namely: 1) Defendants William Schell, IV & Dominick

Daffner's negligent design, development, manufacture, and testing of a giant pumpkin-launching

air gun so as to avoid injury; 2) Defendants Wheatley Farms, Inc., E. Dale Wheatley, and Jeffrey

1

T. Wheatley's negligent real property ownership in failing to exercise reasonable care in the supervision, management, supervision and control of activities on the property so as to avoid injury; 3) Defendants Punkin Chunkin Association & World Championship Punkin' Chunkin' Inc.'s (and its board members Defendant Frank Peyton (President), Defendant Frank Shade (Vice President), Defendant Terry Brewster (Treasurer), and Defendant David Quigley's (Secretary)) and McCulley, Eastham, and Associates, Inc.'s negligence in failing to use in reasonable care in the ownership, operation, management, supervision and control of the 2016 Punkin Chunkin event at Wheatley Farms, their failure to require necessary safety protocols for the event, as well as their negligent failure to provide, among other things, sufficient safety and inspection of Defendant William Schell, IV's giant pumpkin-launching air gun; 4) Defendant Discovery Communications, Inc.'s negligence in the operation, management and control of the subject Punkin Chunkin event, their failure to perform necessary inspections, their failure to require necessary safety protocols for the event and their failure to warn of a dangerous condition so as to avoid injury; and 5) the State of Delaware's and Delaware's Department of Natural Resources and Environmental Control failure to properly test the air tank on Defendant William Schell IV's giant pumpkin-launching air gun which was being used in the presence of thousands of lawful invitees and spectators of the Punkin Chunkin event.

## **PARTIES**

### **Plaintiff**

2.      At all times referenced herein, Plaintiff Suzanne Dakessian was and is a citizen of the State of New York.

3.      Plaintiff Ms. Dakessian attended (and was catastrophically injured at) the 2016 World Championship Punkin' Chunkin' competition in Bridgeville, Delaware, as described

herein, as a member of the media documenting the event for a television-media production company.

**Defendants**

<u>William Schell, IV</u>

4.        Defendant William Schell, IV (hereinafter, "William Schell") is, and at all times relevant to this action was a citizen of the State of Delaware, residing in Millsboro, Delaware.

5.        Defendant William Schell designed, developed, manufactured, assembled and tested a giant pumpkin-launching air gun for participation in the 2016 Punkin' Chunkin' World Championship. Defendant William Schell named his pumpkin-launching air gun "Pumpkin Reaper", depicted (in part) here:



6.        Defendant William Schell may be served at 23745 Schell Rd, Millsboro, DE 19966.

<u>Dominick Daffner</u>

7.        Defendant Dominick Daffner is, and at all times relevant to this action was a citizen of the State of Delaware, residing in Milton, Delaware.

8.        Defendant Dominick Daffner is the grandfather of Defendant William Schell, and he assisted Defendant William Schell in designing, developing, manufacturing, assembling and testing a giant pumpkin-launching air gun for participation in the 2016 Punkin' Chunkin' World Championship.

9.        Defendant Dominick Daffner may be served at 23329 Huff Rd, Milton, DE 19968.

### World Championship Punkin' Chunkin' Inc.

10.        Defendant World Championship Punkin Chunkin, Inc. is, and at all times relevant to this action was, a Delaware corporation with its corporate headquarters in Harbeson, Delaware.

11.        At all times relevant hereto, Defendant World Championship Punkin Chunkin, Inc. was engaged in the business of providing amusement and recreation services, namely coordinating, organizing, controlling, managing and regulating the annual "Punkin Chunkin" competition.

12.        At all relevant times, Defendant World Championship Punkin Chunkin, Inc. transacted, solicited, and conducted business in Delaware and derived substantial revenue from such business.

13.        Defendant World Championship Punkin Chunkin, Inc. is registered to do business in the State of Delaware with Delaware's Division of Corporations under file number 2544933.

14.        Defendant World Championship Punkin Chunkin Inc. may be served at RR 9, Harbeson, DE 19951.

Punkin Chunkin Association

15.        Defendant Punkin Chunkin Association is, and at all times relevant to this action was, a Delaware corporation with its corporate headquarters in Dover, Delaware.

16.        At all times relevant hereto, Defendant Punkin Chunkin Association was engaged in the business of providing amusement and recreation services, namely coordinating, organizing, controlling, managing, and regulating the annual "Punkin Chunkin" competition.

17.        At all relevant times, Defendant Punkin Chunkin Association transacted, solicited, and conducted business in Delaware and derived substantial revenue from such business.

18.        Defendant Punkin Chunkin Association is registered to do business in the State of Delaware with Delaware's Division of Corporations under file number 2941984.

19.        Defendant Punkin Chunkin Association may be served at 1037 S. DuPont Hwy., Dover, DDE, 19901.

Frank Peyton

20.        Defendant Frank Peyton is, and at all times relevant to this action was a citizen of the State of Delaware.

21.        Defendant Frank Peyton is the President of defendant Punkin Chunkin Association.

22.        Defendant Frank Peyton may be served at 22403 Burton RD, Milton, DE 19968.

Frank Shade

23.        Defendant Frank Shade is, and at all times relevant to this action was a citizen of the State of Delaware.

24.     Defendant Frank Shade is the Vice President of defendant Punkin Chunkin Association.

25.     Defendant Frank Shade may be served at 28 Madison Ave, Lewes, DE 19958.

Terry Brewster

26.     Defendant Terry Brewster is, and at all times relevant to this action was a citizen of the State of Delaware.

27.     Defendant Terry Brewster is the Treasurer of defendant Punkin Chunkin Association.

28.     Defendant Terry Brewster may be served at 25372 Estate Dr, Georgetown, DE 19947.

David Quigley

29.     Defendant David Quigley is, and at all times relevant to this action was a citizen of the State of Delaware.

30.     Defendant David Quigley is the Secretary of defendant Punkin Chunkin Association.

31.     Defendant David Quigly may be served at 20356 Cool Spring Rd, Milton, DE 19968

McCulley, Eastham, and Associates, Inc.

32.     Defendant McCulley, Eastham, and Associates, Inc. is, and at all times relevant to this action was, a Kentucky corporation with its corporate headquarters in Greenup, Kentucky.

33.     At all times relevant hereto, Defendant McCulley, Eastham, and Associates, Inc. was hired and engaged by Defendant World Championship Punkin Chunkin, Inc. and/or

6

Defendant Punkin Chunkin Association to provide safety consulting services for the 2016 "Punkin Chunkin" competition.

34.     At all relevant times, Defendant McCulley, Eastham, and Associates, Inc. transacted, solicited, and conducted business in Delaware and derived substantial revenue from such business.

35.     Defendant McCulley, Eastham, and Associates, Inc., despite transacting business in Delaware as per above, is not is registered to do business in the State of Delaware with Delaware's Division of Corporations.

36.     Defendant McCulley, Eastham, and Associates, Inc. may be served at Coal Branch Rd, Greenup, KY 41144.

### Wheatley Farms, Inc.

37.     Defendant Wheatley Farms, Inc. is, and at all times relevant to this action was, a Delaware corporation with its corporate headquarters in Bridgeville, Delaware.

38.     At all times relevant hereto, Defendant Wheatley Farms, Inc. was engaged in the business of being a crop farm and, as relevant here, providing land for amusement and recreation events, namely hosting the annual "Punkin Chunkin" competition.

39.     At all relevant times, Defendant Wheatley Farms, Inc. transacted, solicited, and conducted business in Delaware and derived substantial revenue from such business.

40.     Defendant Wheatley Farms, Inc. is registered to do business in the State of Delaware with Delaware's Division of Corporations under file number 787383.

41.     Defendant Wheatley Farms, Inc. may be served at 19115 Freeland Lane, Bridgeville, DE, 19933.

E. Dale Wheatley

42.     Defendant E. Dale Wheatley is, and at all times relevant to this action was a citizen of the State of Delaware, residing in Bridgeville, Delaware.

43.     Defendant E. Dale Wheatley is an owner and maintains Wheatley Farms, Inc., located at 19115 Freeland Lane, Bridgeville, Delaware, 19933.

44.     Defendant E. Dale Wheatley was responsible for providing management, supervision and control of activities on his Wheatley Farms property during the annual "Punkin Chunkin" competition.

45.     Defendant E. Dale Wheatley may be served at 19115 Freeland Lane, Bridgeville, DE 19933.

Jeffrey T. Wheatley

46.     Defendant Jeffery T. Wheatley is, and at all times relevant to this action was a citizen of the State of Delaware, residing in Harrington, Delaware.

47.     Defendant Jeffery T. Wheatley is an owner and maintains Wheatley Farms, Inc., located at 19115 Freeland Lane, Bridgeville, Delaware, 19933.

48.     Defendant Jeffery T. Wheatley was responsible for providing management, supervision and control of activities on his Wheatley Farms property during the annual "Punkin Chunkin" competition.

49.     Defendant Jeffery T. Wheatley may be served at 2710 Andrewville Road, Harrington, DE 19952.

Discovery Communications, Inc.

50.     Defendant Discovery Communications, Inc. is, and at all times relevant to
this action was, a Delaware corporation with its corporate headquarters in Silver Spring,
Maryland.

51.     At all times relevant hereto, Defendant Discovery Communications, Inc.
owned the Science Channel, which airs the television show "Punkin Chunkin," documenting the
annual "Punkin Chunkin" competition.

52.     At all relevant times, Defendant Discovery Communications, Inc. transacted,
solicited, and conducted business in Delaware and derived substantial revenue from such
business, in particular, its coverage and airing of the Punkin Chunkin competition.

53.     Defendant Discovery Communications, Inc. is registered to do business in the
State of Delaware with Delaware's Division of Corporations under file number 4540106.

54.     Defendant Discovery Communications, Inc. may be served at Corporation
Trust Center, 1209 Orange St., Wilmington, DE, 19801.

State of Delaware

55.     Defendant State of Delaware is, and at all times relevant to this action was a
state in this union.

56.     At all relevant times, Delaware conducted state business in Delaware and
derived substantial revenue from such  business, and acted under the color of state law.

57.     Defendant State of Delaware may be served on both the Attorney General,
Matthew Denn, Department of Justice, 820 N. French Street, Wilmington, Delaware 19801,
pursuant to 10 Del. C. § 3103(c).

<u>State of Delaware (Department of Natural Resources and Environmental Control)</u>

58.     Defendant State of Delaware (Department of Natural Resources and Environmental Control) is, and at all times relevant to this action was, a Delaware state agency with its headquarters in Dover, Delaware.

59.     At all relevant times, conducted state business in Delaware and derived substantial revenue from such  business, and acted under the color of state law.

60.     Defendant Delaware Department of Natural Resources and Environmental Control is an agency of the State of Delaware, and as such, service can be effectuated upon the Attorney General of the State of Delaware, Department of Justice, 820 North French Street, Wilmington, Delaware 19801 and Department of Natural Resources and Environmental Control, State of Delaware, by serving Shawn M. Garvin, Secretary of the Department of Natural Resources and Environmental Control, 89 Kings Highway, Dover, Delaware 19901.

## JURISDICTION AND VENUE

61.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(1) because this case is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

62.     Venue is properly set in this District pursuant to 28 U.S.C. §1391(b) since Defendants transact business within this judicial district or reside here. Likewise, a substantial part of the events giving rise to the claim occurred within this judicial district.

63.     Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, the Court has personal jurisdiction over Defendants, because Defendants are citizens in this state or purposely availed themselves in this state concerning the subject matter of this suit such that

requiring an appearance does not offend traditional notions of fair play and substantial justice.

Further, as noted above Defendants have maintained registered agents in this state.

64.     This court has personal jurisdiction over Defendants pursuant to and consistent

with the Constitutional requirements of Due Process in that Defendants, acting through their

agents or apparent agents, committed one or more of the following:

> a.     The transaction of any business within the state;
>
> b.     The making of any contract within the state;
>
> c.     The commission of tortious acts as outlined below within this state; and
>
> d.     The ownership, use, or possession of any real estate situated within this
>
> state.

65.     Requiring Defendants to litigate these claims in this state does not offend

traditional notions of fair play and substantial justice and is permitted by the United States

Constitution. All of Plaintiff's claims arise in part from conduct Defendants purposefully

directed to Plaintiff's in this state.

66.     Defendants regularly conduct or solicit business and derive substantial revenue

from goods used or consumed in, *inter alia*, this state.

67.     Upon information and belief, at all relevant times, each Defendant was present

and doing business in this state.

68.     At all times relevant hereto, each Defendant expected or should have expected

that its acts would have consequences within the United States of America, and in this state in

particular.

69.     Defendants named herein are conclusively presumed to have been doing business

in this state and are subject to this state's long arm jurisdiction.

70.     At all relevant times, Defendants expected or should have expected that their acts and omissions would have consequences within the United States and in this state.

71.     Plaintiff's damages in this matter accrued in in this state.

## FACTUAL BACKGROUND

### I.     The Punkin' Chunkin' World Championship

72.     Defendant  World Championship Punkin Chunkin, Inc. ("WCPC") coordinates, organizes, manages, controls and regulates the annual "Punkin Chunkin" World Championship competition (the "Competition") through the Punkin Chunkin Association and/or World Championship Punkin Chunkin Association (hereinafter collectively referred to as Defendant "WCPC"), whose board members are Defendant Frank Peyton (President), Defendant Frank Shade (Vice President), Defendant Terry Brewster (Treasurer), and Defendant David Quigley (Secretary).

73.     The Competition is a competitive event held at Wheatley Farms (owned by Defendants Wheatley Farms, Inc., E. Dale Wheatley, and Jeffrey T. Wheatley) in Bridgeville, Delaware.

74.     In 2016, the Competition lasted Friday through Sunday, November fourth through sixth. It was attended by nearly 100,000 persons, generating substantial revenue.

75.     The 2016 Competition was a heavily-sponsored event.

    a.     The following sponsors donated at least $20,000 to Defendant WCPC to put on the Competition: DBC, Inc.; MSP Equipment Rentals; Wheatley Ventures; the State of Delaware; McCulley, Eastham & Associates, Inc.; Piersons's Inc.; Light Action Productions, Inc.; Preston Automotive Group, Inc.; Preston Cambridge Snow Hill Auto Body, Inc.

      b.      The following sponsors donated at least $10,000 to Defendant WCPC to put on the Competition: Delaware State Lottery Games; Adams Radio Group, Inc.; Baker Petroleum, Inc.; GateHouse Media, Inc; Tech Goobber, Inc.; The Voice Radio Network, Inc.; Discover Bank; Waste Management, Inc.; Alan O. Kent Surveying, LLC.

      c.      The following sponsors donated at least $5,000 to Defendant WCPC to put on the Competition: Dickerson Farms of Laurel, De; Holland Jewelers, Inc; Techgas, Inc.; Kaeser Compressors, Inc.; Fast Signs of Odenton, Del.; First Clear Heating & Pluming, Inc.

      d.      The following sponsors donated at least $2,500 to Defendant WCPC to put on the Competition: J&J Power Washing, Inc; Miller Metal Fabrication, Inc.; JACK FM Radio; Penuel Signs, Inc.; Simpson & Son Upolstery, Inc.; Sussex County Post; Midway Auto Parts, Inc.; Diageo plc.

76.      The goal of the Competition is simple: teams create contraptions of various types in an attempt to launch, hurl, project, or otherwise toss pumpkins as far as possible.

77.      The Competition is separated into fifteen competitive categories, grouped by type of pumpkin-hurling contraption, including, among others, Human Power – Centrifugal, Catapult, Human Power, Trebuchet, Air Gun, Centrifugal, and Torsion Catapult.

78.      Air gun contraptions (which are essentially oversize home-made air-guns) are able to shoot pumpkins the farthest, often over 4,000 feet – just shy of a mile. In order to accomplish this, the air-gun-type contraptions feature huge air tanks that are under thousands of pounds of pressure per square inch. When the pressure is released, the air forces the pumpkins

out of metal barrels that are tens of feet long, launching the pumpkins into the air with incredible force. A picture of the lineup of several air-gun contraptions at the 2016 Competition is depicted here:



79.     Though the various pumpkin-launching contraptions are huge – often over 30 feet long and twenty feet high, they are all 'home made', consisting of cobbled-together parts fabricated into highly powerful machines.

**II.     The Championship's Lack of Safety Precautions**

80.     Air gun competition entrants all must receive a boiler certificate from Defendant Delaware's Department of Natural Resources and Environmental Control prior to competition.

81.     Defendant Delaware's Department of Natural Resources and Environmental Control oversees a "Boiler Safety Program", that involves inspecting the pressure vessels of the Air Gun competitors contraptions to ensure that they all meet various boiler safety program regulations – pursuant to Title 7, Chapter 74B of the Delaware Code – signing off on the alleged safety of the contraptions before they are able to compete.

82.     Defendant Delaware's Department of Natural Resources and Environmental Control's  "Boiler Safety Program" was explicitly established "to protect the general public … from unsafe construction, operation, maintenance and repair of boilers, [and] pressure vessels." 7 Del. C. § 7401B(b).

83.     The Boiler Safety Program inspections of the air guns performed by the Delaware Department of Natural Resources and Environmental Control requires no determination of policy; the inspections, rather, are non-discretionary matters of binary decision making: either the tanks pass inspection or they do not, based upon whether the air tanks meet a set of prescribed standards.

84.     Defendant WCPC has a security committee, led by safety consultants from Defendant McCulley, Eastham, and Associates, Inc., who were supposed to inspect the various contraptions prior to the event beginning. Defendant WCPC, under guidance from Defendant McCulley, Eastham, and Associates, Inc., further has numerous rules, intended to protect participants, members of the media, and spectators alike.

85.     Though most event spectators are kept at approximately 75-feet distance from the contraption's pumpkin launches, many persons are allowed inside that 75 foot perimeter, including competition team members, event coordinators, and media. This area is known as "the Pit."

86.     There is no protective safety netting or other barriers separating the event's contraptions from the competition team members, event coordinators, and media.

87.     Defendant WCPC and Defendant McCulley, Eastham, and Associates, Inc.'s rules, specifically Section 21 of the event's rulebook, instruct that those inside the spectator perimeter are to wear hard hats and safety glasses, but that rule is often overlooked, as depicted

in the following photo from the 2016 Competition during active firing where approximately half

of the inside-the-perimeter observers were wearing no protective hard hats at all:



The following is a photograph from the Competition depicting a participant loading an air gun

without wearing a hard hat or safety goggles, as required by the rules:



Beach Paper @BeachPaper · 5 Nov 2016
Day 2: Punkin Chunkin dlvr.it/MbfVrx #netde pic.twitter.com/vyrIuFhg1e

88.     Section 1 of Defendant WCPC and Defendant McCulley, Eastham, and

Associates, Inc.'s rules dictate that "no alcohol [is] allowed in [the] pit." Nevertheless, many

event participants break this rule, going so far as to drink highly-concentrated "moonshine"

alcohol:



89.     As the Competition progresses, competitors seek to push their contraptions further and further to achieve longer pumpkin launches in the final shots of the competition. For the air-gun participant owners, that means increasing the pressure of the giant compressed air canisters (and thereby the violence of the shot). The resulting increased pressure and sudden release of pressure increases the likelihood of a catastrophic failure.

**III.      Defendant William Schell's "Pumpkin Reaper" Air Gun**

90.     Defendant William Schell was one of twenty-five entrants into the air gun category of the 2016 Competition. His air gun, named the "Pumpkin Reaper" had been in the competition on at least two other occasions.

91.     Upon information and belief, Defendant William Schell's grandfather, Defendant Dominick Daffner, played a critical role in all phases of the design, construction, inspection, assembly and maintenance of the "Pumpkin Reaper" air gun.

92.     Though Defendant William Schell's "Pumpkin Reaper" had never won the air gun competition category, it still shoots pumpkins to extreme lengths. At the 2016 Competition, on Saturday, November 5, 2016, it fired a pumpkin 3,377 feet.

## IV.     <u>The Incident</u>

93.     On Sunday, November 6, 2016, at approximately 2:45 p.m., as Defendant William Schell was firing his final pumpkin of the 2016 Competition, his air gun, the Pumpkin Reaper, malfunctioned.

94.     Upon information and belief, given that it was his final shot of the competition, Defendant William Schell increased the pressure in the compressed air canister of the "Pumpkin Reaper" in order to achieve the longest potential pumpkin launch possible.

95.     During this final shot of the competition, Pumpkin Reaper's trap door – which is used for loading pumpkins into the contraption and is approximately the size of a car door – detached and flew off of the Pumpkin Reaper, propelling the door and other parts of the Pumpkin Reaper into the air.

96.     The various pieces of the Pumpkin Reaper air gun, including but not limited to its extremely heavy trap door began to rain down within the competition and media area, where Plaintiff Ms. Dakessian was standing.  Plaintiff Ms. Dakessian started to run, but looked over her shoulder just as the heavy car-door-sized trap door made of metal fell from the sky, striking her with tremendous force in the head and face. (Hereinafter, the "Incident").

97.     A photograph of the trap door (and other parts) flying off of the Pumpkin Reaper was photographed by a spectator and is depicted below:



98.     The extreme force of the blow from the large metal trap door knocked Plaintiff Ms. Dakessian to the ground, where she lay motionless. The flimsy hard hat she was provided gave her no protection from the blow.

99.     Due to the severity of her injuries, Delaware State Police initially reported that Plaintiff Ms. Dakessian died.

100.    After being intubated at the scene and flown by chopper to Nanticoke Memorial Hospital, the Plaintiff Ms. Dakessian, was ultimately flown by a Life Net helicopter to the Christiana Medical Center, which hosts the only level I trauma center in Delaware, where she was eventually stabilized in critical condition.

101.    The Pumpkin Reaper explosion shut down the remainder of Sunday's events at Wheatley Farms.

## V.    Plaintiff's Injuries

102.    As a direct and proximate result of the Defendants' negligence, Plaintiff Ms. Dakessian suffered severe and permanent injuries.

103.    Plaintiff Ms. Dakessian was in a coma for an extensive period of time and underwent emergency surgery to remove part of her skull due to brain swelling.

104.    The effects of her injuries, which include irreversible brain damage, a fractured skull, more than ten other fractures of the head and face, blindness in her right eye and serious injury to her left upper extremity resulting in the significant loss of use of that extremity are long-lasting and permanent in nature and affect virtually all activities of Plaintiff's daily living.

105.    As a sole proximate result of the catastrophic injuries suffered by plaintiff, she has been incapacitated from her employment and will be so incapacitated in the future with a resultant loss therefrom.

106.    Plaintiff Ms. Dakessian's medical bills are in excess of $75,000.

### COUNT I
### (Negligence)
### *Against Defendants William Schell and Dominick Daffner*

107.    Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

108.    At all relevant times, the Defendants William Schell and Dominick Daffner owed a duty to Plaintiff (and all of those in attendance at the 2016 Competition) to design, develop, manufacture, assemble and test their pumpkin-launching air gun named "Pumpkin Reaper" in a reasonably safe manner so that it would not malfunction or otherwise cause injury to others.

109.    Defendants William Schell and Dominick Daffner breached their duty of reasonable care to Plaintiff by defectively designing, manufacturing, assembling, testing and/or negligently failing to warn of these defects in his pumpkin-launching air gun named "Pumpkin Reaper", thereby causing Plaintiff injuries and damages as outlined herein.

110.    Defendants William Schell and Dominick Daffner's actions lacked the ordinary care that a reasonably prudent and careful person would exercise under the circumstances by:

(a)    Failing to conduct adequate mechanical testing on components, subassemblies and/or the finished "Pumpkin Reaper" in such a manner that it was prone to failure and malfunction;

(b)    Designing "Pumpkin Reaper" in such a manner that it was prone to failure and malfunction;

(c)    Manufacturing "Pumpkin Reaper" in such a manner that it was prone to failure and malfunction;

(d)    Assembling "Pumpkin Reaper" in such a manner that it was prone to failure and malfunction;

(e)    Failing to test the "Pumpkin Reaper" in such a manner (to the fullest extent as used in the Competition) that it was prone to failure and malfunction;

(f)    Failing to promptly and adequately notify the 2016 Championship organizers and event landowners (Defendants World Championship Punkin Chunkin, Inc. and Wheatley Farms, Inc., E. Dale Wheatley, and Jeffrey T. Wheatley, respectively) and instruct event attendees (including Plaintiff) at the earliest possible date of known or possible defects in the pumping-launching air gun named "Pumpkin Reaper";

(g)     Repeatedly firing the pumping-launching air gun named "Pumpkin Reaper", putting  undue stress on the components of the air gun such that it was possible, if not likely, that components such as the metal trap door would rattle loose, ejecting from the air gun during a firing event; and

(h)     Failing to perform sufficient pre-event test shots to ensure the structural integrity of the pumping-launching air gun named "Pumpkin Reaper".

111.     Defendants William Schell and Dominick Daffner exhibited reckless, willful, and wanton conduct, warranting the imposition of punitive damages, by:

(a)     Engaging in actions which were so unreasonable and so dangerous that Defendant William Schell and Defendant Dominick Daffner knew or should have known that harm would probably result;

(b)     Engaging in conduct which displayed a conscious choice to ignore consequences when it was reasonably apparent that someone would most likely be harmed; and

(c)     Acting in a manner which was so unreasonably dangerous that Defendants William Schell and Dominick Daffner exhibited a conscious disregard for the health and safety for those in attendance at the Punkin Chunkin event, including the plaintiff.

112.     Defendants William Schell and Dominick Daffner's actions and omissions, as outlined above, proximately caused Plaintiff Ms. Dakessian's injuries as set forth above. Plaintiff has sustained severe and permanent physical injuries, severe emotional distress, mental anguish, economic losses and other damages, all of which she will continue to suffer from for the remainder of her natural life, for which she is entitled to compensatory, punitive and equitable damages and declaratory relief in an amount to be proven at trial.

<u>**COUNT II**</u>
**(Strict Liability for Ultrahazardous Activity)**
*Against Defendants William Schell, Dominick Daffner, Wheatley Farms, Inc., E. Dale*
*Wheatley, Jeffrey T. Wheatley, Punkin' Chunkin' Association, World Championship Punkin'*
*Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, McCulley,*
*Eastham, and Associates, Inc. and Discovery Communications, Inc.*

113.    Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

114.    Defendants William Schell, Dominick Daffner, Wheatley Farms, Inc., E. Dale Wheatley, Jeffrey T. Wheatley,  Punkin' Chunkin' Association, World Championship Punkin' Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, McCulley, Eastham and Associates, Inc. and Discovery Communications, Inc.'s conduct was ultrahazardous because launching pumpkins using homemade contraptions powered by high pressure air shot through a barrel tens of feet in length is an activity that is inherently and extraordinarily dangerous.

115.    Under Delaware law, a person who engages in an activity that is inherently and extraordinarily dangerous is liable for any injury proximately caused by the activity whether or not the person acted negligently.

116.    Defendants William Schell, Dominick Daffner, Wheatley Farms, Inc., E. Dale Wheatley, Jeffrey T. Wheatley,  Punkin' Chunkin' Association, World Championship Punkin' Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, McCulley, Eastham and Associates, Inc. and Discovery Communications, Inc.'s  actions and omissions in causing, allowing and permitting the subject ultrahazardous, dangerous and defective air gun to fire pumpkins and malfunction in the presence of thousands of lawful invitees to the subject Punkin Chunkin event proximately caused Plaintiff Ms. Dakessian's injuries as set forth above. Plaintiff has sustained severe and permanent physical injuries, severe emotional distress, mental anguish, economic losses and other damages, all of which she will continue to suffer from for the

remainder of her natural life, for which she is entitled to compensatory, punitive and equitable

damages and declaratory relief in an amount to be proven at trial.

## COUNT III
### (Negligence *Per Se*)
### *Against Defendants William Schell and Dominick Daffner*

117.     Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set

forth herein.

118.     Delaware's criminal statute 11 Del.C. § 1445 makes it a crime to possess "A

weapon which by compressed air or by spring discharges or projects a pellet, slug or bullet …

larger than a BB shot."

119.     Defendants William Schell and Dominick Daffner violated Delaware's criminal

statute 11 Del.C. § 1445 by possessing the air gun named "Pumpkin Reaper", a gun that, by

compressed air, projects pumpkin slugs.

120.     Delaware's criminal statute 11 Del.C. § 1445 was enacted for the public's safety

and creates a standard of conduct exists to protect the class of which plaintiff is a member.

121.     Plaintiff Ms. Dakessian is in the class of persons (the public at large, including

bystanders) that Delaware's criminal statute 11 Del.C. § 1445 was intended to protect from

personal harm.

122.     Defendants William Schell and Dominick Daffner's violation of Delaware's

criminal statute 11 Del.C. § 1445 proximately caused Plaintiff Ms. Dakessian's injuries as set

forth above because if not for Defendant William Schell's criminal act of possessing an illegal

air gun, Plaintiff Ms. Dakessian would not have been injured as alleged herein. Plaintiff has

sustained severe and permanent physical injuries, severe emotional distress, mental anguish,

economic losses and other damages, all of which she will continue to suffer from for the

remainder of her natural life, for which she is entitled to compensatory, punitive and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT IV
### (Negligence/Premises Liability)
***Against Defendants Wheatley Farms, Inc., E. Dale Wheatley, and Jeffrey T. Wheatley***

123.    Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

124.    Defendants Wheatley Farms, Inc., E. Dale Wheatley, and Jeffrey T. Wheatley (the "Landowner Defendants" or "Defendant Landowners") are landowners and possessors of Wheatley Farms located in Bridgeville, Delaware.

125.    At all relevant times the Landowner Defendants owned certain real property known as Wheatley Farms and located at 19115 Freeland Lane, in the Town of Bridgeville and State of Delaware

126.    Landowner Defendants operated said Wheatley Farms premises.

127.    Landowner Defendants managed said Wheatley Farms premises.

128.    Landowner Defendants maintained said Wheatley Farms premises.

129.    Landowner Defendants controlled said Wheatley Farms premises.

130.    Landowner Defendants supervised said Wheatley Farms premises and the activities taking place thereon, including but not limited to the Punkin Chunkin event.

131.    At all times, Landowner Defendants, its agents, servants and/or employees owned, operated, managed, maintained, supervised and had charge and control of the said Wheatley Farms premises as hereinbefore set forth and described.

132.    Plaintiff Ms. Dakessian was a lawful invitee to Wheatley Farms to attend and film the Punkin Chunkin Competition.

133.    Landowner Defendants owed a duty to the public, including Plaintiff, to see and ensure that the premises and the activities thereon were managed and maintained in a reasonably safe condition for all persons lawfully thereat.

134.    Landowner Defendants retained sufficient control over the rules, regulations, and administration of Defendant World Championship Punkin' Chunkin' Inc.'s Competition to require modifications to the Competition if it so deemed it appropriate.

135.    With this duty, the Landowner Defendants are responsible for injuries that are caused by defects or conditions that they had actual notice of or that could have been discovered by reasonably prudent inspection.

136.    Landowner Defendants were negligent and careless in the following respects:

(a)    failing to provide safety netting or other shields to those in the participant/media area;

(b)    failing to adequately warn Plaintiff of the propensity for Competition participants to "max out" their contraptions in an attempt to shoot pumpkins further in the final shots of the Competition;

(c)    failing to properly coordinate with Defendants Punkin' Chunkin' Association, World Championship Punkin' Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, McCulley, Eastham and Associates, Inc. and Discovery Communications, Inc. in order to ensure that the event was employing necessary inspection protocols, had adequate security and had medical providers on site;

(d)    Failing to use reasonable care in the operation, management, maintenance, control and supervision of Wheatley Farms during the Punkin Chunkin event; and

(e)    Failing to use reasonable care in ensuring that the activities being engaged in on their Wheatley Farms property in the presence of thousands of lawful invitees was safe.

137.    Defendant landowners acted in a willful, wanton manner and with a conscious disregard for the health and safety of invitees to their premises, including the plaintiff, warranting the imposition of punitive damages,  in the following respects:

(a)    Defendant Landowners' conduct (or failure to act) as outlined above was reckless in that Defendant Landowners' actions reflect a knowing disregard of a substantial and unjustifiable risk. Though Defendant Landowners' may not have intended to cause harm, Defendant Landowners' actions were so unreasonable and so dangerous that Defendant Landowners' knew or should have known that harm will probably result.

(b)    Defendant Landowners' conduct (or failure to act) as outlined above was willful in that it showed a conscious decision to disregard the rights of others. Defendant Landowners' conduct displayed a conscious choice to ignore consequences when it was reasonably apparent that someone would probably be harmed.

(c)    Defendant Landowners' conduct (or failure to act) as outlined above was wanton in that Defendant Landowners, though potentially not intending to cause harm, acted so unreasonably and in a manner so dangerous that Defendant Landowners knew or should have known that harm would probably result.

(d)    Defendant Landowners' conduct (or failure to act) as outlined above was willful, wanton and exhibited a conscious disregard for the health and safety of lawful invitees of the Punkin Chunkin event including the plaintiff,  in that Defendant Landowners

27

knew or should have known that the injuries which were likely to be suffered by a participant or
lawful attendee such as the plaintiff in the event of an accident would be catastrophic in nature.

138.    Landowner Defendants' inactions in failing to cure the above-referenced defects,
conditions, and/or situations proximately caused Plaintiff Ms. Dakessian's injuries as set forth
above.  Plaintiff has sustained severe and permanent physical injuries, severe emotional distress,
mental anguish, economic losses and other damages, all of which she will continue to suffer
from for the remainder of her natural life, for which she is entitled to compensatory, punitive and
equitable damages and declaratory relief in an amount to be proven at trial.

### COUNT V
#### (Negligence)
*Against Defendants Punkin' Chunkin' Association, World Championship Punkin' Chunkin'
Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, and McCulley, Eastham,
and Associates, Inc.*

139.    Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set
forth herein.

140.    At all relevant times, the Defendants Punkin' Chunkin' Association, World
Championship Punkin' Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David
Quigley, and McCulley, Eastham, and Associates, Inc. owed a duty to Plaintiff (and all of those
in attendance at the 2016 Competition) to ensure that appropriate rules and safety protocols were
in place to protect spectators and all in attendance at the Competition, that reasonable care was
exhibited in the inspection and use of all of the pumpkin firing contraptions during the Punkin
Chunkin event, that adequate management, supervision and control of the event was employed
and that invitees to the said event did not face an unreasonable risk of harm.

141.    Defendants Punkin' Chunkin' Association, World Championship Punkin'
Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, and McCulley,

Eastham, and Associates, Inc. each breached his/its duty of reasonable care to Plaintiff by failing to adopt adequate and/or appropriate rules and safety protocols to ensure Competition participants acted in a safe manner and that safeguards were in place in the event of an accident, by failing to ensure that reasonable care was exhibited in the inspection and use of all of the contraptions during the Punkin Chunkin event, by failing to take necessary steps in order to ensure that adequate management, supervision and control of the event was employed and in failing to ensure that invitees to the said event did not face an unreasonable risk of harm, as outlined herein.

142.    Defendants Punkin' Chunkin' Association, World Championship Punkin' Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, and McCulley, Eastham, and Associates, Inc.'s actions were negligent and careless and lacked ordinary care that a reasonably prudent and careful person or entity would exercise under the circumstances by:

(a)    Failing to ensure that all Competition entrant's pumpkin-throwing contraptions had undergone adequate mechanical testing on components, subassemblies and/or the finished contraption in such a manner to ensure it was not prone to failure and malfunction;

(b)    Failing to ensure that all Competition entrant's pumpkin-throwing contraptions was designed in such a manner to ensure it was not prone to failure and malfunction;

(c)    Failing to ensure that all Competition entrant's pumpkin-throwing contraptions were manufactured in such a manner to ensure it was not prone to failure and malfunction;

(d)      Failing to ensure that all Competition entrant's pumpkin-throwing contraptions were assembled in such a manner to ensure it was not prone to failure and malfunction;

(e)      Failing to inspect each entrant's pumpkin-throwing contraption on a daily basis to ensure structural integrity;

(f)      Failing to install safety netting over the participant/media area;

(g)      Failing to perform pre-event test from each pumpkin-throwing contraption to establish safe-perimeters for each contraption (a safe-perimeter analysis);

(h)      Failing to ensure that lawful invitees of the Punkin Chunkin event were not faced with an unreasonable risk of harm;

(i)      Failing to properly and adequately manage, control and supervise the Punkin Chunkin event;

(j)      Failing to ensure sufficient first-aid response units on site; and

(k)      Failing to properly coordinate with the show producers, Defendant Discovery Communications, Inc. to ensure that the event had adequate security and medical providers on site.

143.      Defendants Punkin' Chunkin' Association, World Championship Punkin' Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, and McCulley, Eastham, and Associates, Inc. acted in a willful, wanton manner and with a conscious disregard for the health and safety of invitees to their premises, including the plaintiff, warranting the imposition of punitive damages, in the following respects:

(a)      Defendants Punkin' Chunkin' Association, World Championship Punkin' Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, and

McCulley, Eastham, and Associates, Inc.'s conduct (or failure to act) as outlined above was reckless in that their actions reflect a knowing disregard of a substantial and unjustifiable risk. Though Defendants Punkin' Chunkin' Association, World Championship Punkin' Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, and McCulley, Eastham, and Associates, Inc. may not have intended to cause harm, Defendants Punkin' Chunkin' Association, World Championship Punkin' Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, and McCulley, Eastham, and Associates, Inc.'s actions were so unreasonable and so dangerous that Defendants Punkin' Chunkin' Association, World Championship Punkin' Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, and McCulley, Eastham, and Associates, Inc. knew or should have known that harm will probably result;

(b)     Defendants Punkin' Chunkin' Association, World Championship Punkin' Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, and McCulley, Eastham, and Associates, Inc.'s conduct (or failure to act) as outlined above was willful in that it showed a conscious decision to disregard the rights of others. Defendants Punkin' Chunkin' Association, World Championship Punkin' Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, and McCulley, Eastham, and Associates, Inc.'s conduct displayed a conscious choice to ignore consequences when it was reasonably apparent that someone would probably be harmed;

(c)     Defendants Punkin' Chunkin' Association, World Championship Punkin' Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, and McCulley, Eastham, and Associates, Inc.'s conduct (or failure to act) as outlined above was wanton in that Defendants Punkin' Chunkin' Association, World Championship Punkin'

31

Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, and McCulley, Eastham, and Associates, Inc., though potentially not intending to cause harm, acted so unreasonably and in a manner so dangerous that Defendants Punkin' Chunkin' Association, World Championship Punkin' Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, and McCulley, Eastham, and Associates, Inc. knew or should have known that harm would probably result; and

(d)      Defendants Punkin' Chunkin' Association, World Championship Punkin' Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, and McCulley, Eastham, and Associates, Inc.'s conduct (or failure to act) as outlined above was wanton in that Defendants Punkin' Chunkin' Association, World Championship Punkin' Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, and McCulley, Eastham, and Associates, Inc. knew or should have known that the injuries which were likely to be suffered by a participant or lawful attendee such as the plaintiff in the event of an accident would be catastrophic in nature.

144.    Defendants Punkin' Chunkin' Association, World Championship Punkin' Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, and McCulley, Eastham, and Associates, Inc.'s actions (and inactions), as outlined above, proximately caused Plaintiff Ms. Dakessian's injuries as set forth above.  Plaintiff has sustained severe and permanent physical injuries, severe emotional distress, mental anguish, economic losses and other damages, all of which she will continue to suffer from for the remainder of her natural life, for which she is entitled to compensatory, punitive and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT VI
### (Negligence – Failure to Adequately Inspect (Restatement (Second) of Torts § 324A))
*Against Defendants Punkin' Chunkin' Association, World Championship Punkin'
Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, and McCulley,
Eastham, and Associates, Inc.*

145.    Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set

forth herein.

146.    Defendants Punkin' Chunkin' Association, World Championship Punkin'

Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, and McCulley,

Eastham, and Associates, Inc.  rendered services, namely, the inspection of Defendant William

Schell's air gun "Pumpkin Reaper" which Defendants Punkin' Chunkin' Association, World

Championship Punkin' Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David

Quigley, and McCulley, Eastham, and Associates, Inc.  did recognize or should have recognized

as necessary for the protection of third parties, including Plaintiff.

147.    Defendants Punkin' Chunkin' Association, World Championship Punkin'

Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, and McCulley,

Eastham, and Associates, Inc.  failed to exercise reasonable care in inspecting Defendant

William Schell's air gun "Pumpkin Reaper" by failing to notice, flag, or prevent the firing of the

air gun given its loose metal trap door or propensity to rattle loose the metal trap door if fired

repeatedly. A loose metal trap could, as it did here, become a free-falling projectile with the

ability to fall onto onlookers and cause catastrophic injury.

148.    Defendants Punkin' Chunkin' Association, World Championship Punkin'

Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, and McCulley,

Eastham, and Associates, Inc.'s were negligent and careless in their inspection of the aforesaid

air gun "Pumpkin Reader" to the extent they performed any inspection of same at all, in the following respects:

(a)     In failing to identify hazards and defects with regard to the "Pumpkin Reader" which posed an unreasonable risk of harm to all lawful invitees to the Punkin Chunkin event;

(b)     In failing to perform any inspection at all of the Pumpkin Reader;

(c)     In failing to perform a sufficient and/or proper inspection of the "Pumpkin Reader"; and

(d)     in taking on to a duty owed by the other (i.e., was undertaken to supplement the inspection by Defendant William Schell himself) and failing to perform such inspection in a reasonably prudent manner.

149.    Defendants Punkin' Chunkin' Association, World Championship Punkin' Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, and McCulley, Eastham, and Associates, Inc.'s actions (and inactions) as outlined above were willful, wanton and with a conscious disregard for the health and safety of all lawful invitees to the Punkin Chunkin event, including the plaintiff, warranting the imposition of punitive damages.

150.    Defendants Punkin' Chunkin' Association, World Championship Punkin' Chunkin' Inc., Frank Peyton, Frank Shade, Terry Brewster, David Quigley, and McCulley, Eastham, and Associates, Inc.'s actions (and inactions) as outlined above proximately caused Plaintiff Ms. Dakessian's injuries as set forth above.  Plaintiff has sustained severe and permanent physical injuries, severe emotional distress, mental anguish, economic losses and other damages, all of which she will continue to suffer from for the remainder of her natural life,

for which she is entitled to compensatory, punitive and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT VII
### (Negligence)
### *Against Defendant Discovery Communications, Inc.*

151.    Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

152.    At all relevant times, the Defendant Discovery Communications, Inc. owed a duty to Plaintiff (and all of those producing content for its television show "Punkin Chunkin") to ensure that appropriate rules and safety protocols were in place to protect spectators and all in attendance at the Competition, that reasonable care was exhibited in the inspection and use of all of the contraptions during the Punkin Chunkin event, that reasonable care was exhibited in the inspection and use of all of the pumpkin firing contraptions during the Punkin Chunkin event, that adequate management, supervision and control of the event was employed and that invitees to the said event did not face an unreasonable risk of harm.

153.    Defendant Discovery Communications, Inc. breached its duty of reasonable care to Plaintiff by failing to properly inquire or inspect the safeguards put in place by the Competition producer (Defendants Punkin' Chunkin' Association & World Championship Punkin' Chunkin' Inc.) or the Defendant Landowners, by failing to ensure that reasonable care was exhibited in the inspection and use of all of the contraptions during the Punkin Chunkin event, by failing to ensure that adequate management, supervision and control of the event was employed and by failing to exhibit reasonable care in ensuring that all lawful invitees to the Punkin Chunkin event, which they were putting on the air for their own financial gain, were not exposed to an unreasonable risk of harm.

154.     Upon information and belief, Defendant Discovery Communications, Inc.'s actions were negligent and careless and lacked ordinary care that a reasonably prudent and careful entity would exercise under the circumstances by:

(a)     Failing to inquire about the rules and safety protocols in place to protect media and spectators in attendance at the Competition to ensure that they were not exposed to an unreasonable risk of harm;

(b)     Failing to ensure that the various contraptions being used in the event, including but not limited to the Pumpkin Reaper, were properly and adequately tested and free from defects which could cause serious injury;

(c)     Failing to use reasonable care in the operation, management, maintenance, supervision and control of Wheatley Farms, the site of the Punkin Chunkin event, and the Punkin Chunkin event itself; and

(d)     Failing to ensure that proper safety measures were implemented by the aforementioned landowners or event producers, including by not limited to:

i.     Adequate individual protective gear rated for projectiles;

ii.     Overhead netting for the crew members, rated to the strength necessary to resist an explosive event;

iii.     Adequate protocols for crew location in relation to the contraptions; and

iv.     Providing remote-mounted cameras in lieu of hand-held cameras requiring close presence of filming crew.

155.    Defendant Discovery Communications, Inc. acted in a willful, wanton manner and with a conscious disregard for the health and safety of invitees to the Punkin Chunkin event, including the plaintiff, warranting the imposition of punitive damages, in the following respects:

(a)    Defendant Discovery Communications, Inc.'s conduct (or failure to act) as outlined above was reckless in that Defendant Discovery Communications, Inc.'s actions reflect a knowing disregard of a substantial and unjustifiable risk. Though Defendant Discovery Communications, Inc. may not have intended to cause harm, Defendant Discovery Communications, Inc.'s actions were so unreasonable and so dangerous that Defendant Discovery Communications, Inc. knew or should have known that harm will probably result.

(b)    Defendant Discovery Communications, Inc.'s conduct (or failure to act) as outlined above was willful in that it showed a conscious decision to disregard the rights and safety of others. Defendant Discovery Communications, Inc.'s conduct displayed a conscious choice to ignore consequences when it was reasonably apparent that someone would probably be harmed.

(c)    Defendant Discovery Communications, Inc.'s conduct (or failure to act) as outlined above was wanton in that Defendant Discovery Communications, Inc. though potentially not intending to cause harm, acted so unreasonably and in a manner so dangerous that Defendant Discovery Communications, Inc. knew or should have known that harm would probably result; and

(d)    Defendants Discovery Communications, Inc.'s conduct (or failure to act) as outlined above was wanton in that Defendant Discovery Communications, Inc., their agents, servants, employees and/or licensees knew or should have known that the injuries which

37

were likely to be suffered by a participant or lawful attendee such as the plaintiff in the event of an accident would be catastrophic in nature.

156.    Defendant Discovery Communications, Inc.'s actions (and inactions), as outlined above, proximately caused Plaintiff Ms. Dakessian's injuries as set forth above.  Plaintiff has sustained severe and permanent physical injuries, severe emotional distress, mental anguish, economic losses and other damages, all of which she will continue to suffer from for the remainder of her natural life, for which she is entitled to compensatory, punitive and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT VIII
### (Negligence – Failure to Adequately Inspect (Restatement (Second) of Torts § 324A))
***Against Defendant State of Delaware & State of Delaware (Department of Natural Resources and Environmental Control)***

157.    Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

158.    Defendants State of Delaware & Delaware Department of Natural Resources and Environmental Control rendered services, namely, the non-discretionary inspection and certification of Defendant William Schell's air gun "Pumpkin Reaper" which Delaware Department of Natural Resources and Environmental Control did or should have recognized as necessary for the protection of third parties within their State, including Plaintiff.

159.    Defendants State of Delaware & Delaware Department of Natural Resources and Environmental Control failed to exercise reasonable care in inspecting Defendant William Schell's air gun "Pumpkin Reaper" by failing to notice, flag, or prevent the firing of the air gun given its faulty air tank, covered by the Department's "Boiler Safety Program" as described above. The "Pumpkin Reaper's" faulty air tank allowed for excessive pressure in the tank to build, resulting in a higher-than-expected release of pressure from the tank, which, in turn,

allowed the metal trap door (as described above) to release, become a free-falling projectile with the ability to fall onto onlookers.

160.     Defendants State of Delaware & Delaware Department of Natural Resources and Environmental Control's negligence by and through its failure to perform a reasonable and necessary non-discretionary inspection of the Pumpkin Reaper, as outlined above, increased the risk of such harm to the public;

161.     The State of Delaware & Delaware Department of Natural Resources and Environmental Control's actions (and inactions) as outlined above proximately caused Plaintiff Ms. Dakessian's injuries as set forth above.  Plaintiff has sustained severe and permanent physical injuries, severe emotional distress, mental anguish, economic losses and other damages, all of which she will continue to suffer from for the remainder of her natural life, for which she is entitled to compensatory, punitive and equitable damages and declaratory relief in an amount to be proven at trial.

<u>**COUNT IX**</u>
<u>**(Gross Negligence)**</u>
***Against Defendant State of Delaware & State of Delaware (Department of Natural Resources and Environmental Control)***

162.     Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

163.     Defendants State of Delaware & Delaware Department of Natural Resources and Environmental Control's actions and omissions – in particular, their failure to perform necessary and proper inspections of the Pumpkin Reaper air gun in question, were willful, reckless, wanton and exhibited a conscious disregard for the health and safety of all lawful invitees of the Punkin Chunkin event which was being held within their State, as follows:

39

        (a)        Defendants State of Delaware & Delaware Department of Natural Resources and Environmental Control's conduct (or failure to act) as outlined above was reckless in that the State of Delaware & Delaware Department of Natural Resources and Environmental Control's actions reflect a knowing disregard of a substantial and unjustifiable risk. Though Defendants the State of Delaware & Delaware Department of Natural Resources and Environmental Control may not have intended to cause harm, the State of Delaware & Delaware Department of Natural Resources and Environmental Control's actions were so unreasonable and so dangerous that the State of Delaware & Delaware Department of Natural Resources and Environmental Control knew or should have known that harm will probably result.

        (b)        Defendants State of Delaware & Department of Natural Resources and Environmental Control's conduct (or failure to act) as outlined above was willful in that it showed a conscious decision to disregard the rights, health and safety of others. The State of Delaware & Delaware Department of Natural Resources and Environmental Control's conduct displayed a conscious choice to ignore consequences when it was reasonably apparent that someone would probably be harmed.

        (c)        Defendants State of Delaware & Department of Natural Resources and Environmental Control's conduct (or failure to act) as outlined above was wanton in that the State of Delaware & Delaware Department of Natural Resources and Environmental Control though potentially not intending to cause harm, acted so unreasonably and in a manner so dangerous that the State of Delaware & Delaware Department of Natural Resources and Environmental Control knew or should have known that harm would probably result.

(d)    Defendants State of Delaware & Department of Natural Resources and Environmental Control's conduct (or failure to act) as outlined above was willful, wanton and in conscious disregard for the health and safety of all lawful invitees to the Punkin Chunkin event in that Defendants State of Delaware & Department of Natural Resources and Environmental Control , their agents, servants, employees and/or licensees knew or should have known that the injuries which were likely to be suffered by a participant or lawful attendee such as the plaintiff in the event of an accident would be catastrophic in nature and despite knowing this, failed to perform indicated and necessary inspections of the Pumpkin Reaper air gun being used in the Punkin Chunkin event.

(e)    Defendants State of Delaware & Delaware Department of Natural Resources and Environmental Control were grossly negligent in failing to inspect Defendant William Schell's air gun "Pumpkin Reaper",  by failing to notice, flag, or prevent the firing of the air gun given its faulty air tank, covered by the Department's "Boiler Safety Program" as described above and by failing to recognize that use of the "Pumpkin Reaper" in the presence of thousands of lawful invitees and spectators attending the Punkin Chunkin event would cause an unreasonable risk of harm to all in attendance with potentially devastating ramifications.

164.    The State of Delaware & Delaware Department of Natural Resources and Environmental Control's gross negligence as outlined above proximately caused Plaintiff Ms. Dakessian's injuries as set forth above.  Plaintiff has sustained severe and permanent physical injuries, severe emotional distress, mental anguish, economic losses and other damages, all of which she will continue to suffer from for the remainder of her natural life, for which she is entitled to compensatory, punitive and equitable damages and declaratory relief in an amount to be proven at trial.

41

## COUNT X
### (Negligent Infliction of Emotional Distress)
### *Against All Defendants*

165.     Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

166.     Defendants' negligence, as described herein at length, caused Plaintiff fright, terror, fear of impending death and severe emotional distress.

167.     Plaintiff was within the immediate area of physical danger as a result of Defendants' negligence involved with the Incident, as outlined herein.

168.     As a result of defendants' negligence as outlined in this Complaint, the plaintiff suffered extensive emotional distress, mental anguish, depression and loss of enjoyment of life.

169.     Defendants' actions (and inactions) proximately caused Plaintiff Ms. Dakessian's emotional distress, depression and loss of enjoyment of life, as set forth above.  Accordingly, Plaintiff is entitled to compensatory, punitive and equitable damages and declaratory relief in an amount to be proven at trial.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays for judgment against all defendants and in her favor and award additional relief as follows:

1.     Economic and non-economic damages, special damages and general damages, including past and future pain and suffering, in an amount to be supported by the evidence at trial;

2.     For compensatory damages for the acts complained of herein in an amount to be determined by a jury;

3.       For disgorgement of profits for the acts complained of herein in an amount to be determined by a jury;

4.       Punitive damages for the acts complained of herein in an amount to be determined by a jury;

5.       For an award of attorneys' fees and costs;

6.       For prejudgment interest pursuant to Title 6 Delaware Code;

7.       For the costs of suit;

8.       For post-judgment interest; and,

9.       For such other and further relief as this Court may deem just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiff demands a jury trial as to all claims and issues triable of right by a jury.

Date: August 16, 2017            Respectfully submitted,

THE DEBRUIN FIRM LLC

By:    */s/ David W. deBruin*
David W. deBruin, Esq.
1201 N.Orange Street, Suite 500
Wilmington, DE 19801
Office: 302.660.2744
Fax: 302.650.1574
ddebruin@thedebruinfirm.com

SEEGER WEISS LLP

By:    */s/ Christopher A. Seeger*
Christopher A. Seeger (*pro hac vice* to be sought)
Jeffrey Grand (*pro hac vice* to be sought)
SEEGER WEISS, LLP
77 Water Street
New York, New York 10005
Telephone: (212) 584-0700
Facsimile: (212) 584-0799
cseeger@seegerweiss.com
jgrand@seegerweiss.com

43

LAW OFFICES OF MARC S. ALBERT

By:   */s/ Marc S. Albert*
Marc S. Albert (*pro hac vice* to be sought)
LAW OFFICES OF MARC S. ALBERT
32-72 Steinway Street
Astoria, New York 11103
Telephone: (347) 472-5080
Facsimile:  (718) 777-0353
malbert@msainjurylaw.com